## *Joseph Day* v. *William Wilber, q. t.*

IN error on a *certiorari* to a justice's court, upon a conviction under the 10*l.* act, for selling spirituous liquors without a license. The plaintiff assigned twenty errors, but relied principally on the following: 1st. That there was no indorsement on the warrant, either of the name of the plaintiff or the title of the statute on which the process was issued. 2d. That in the process or warrant issued on the plaint, there was no plea mentioned, nor that the defendant owed the plaintiff and the overseers of the poor any money and detained it from them. 3d. That the plaintiff and defendant being freeholders, the process was by warrant, and not by summons. 4th. That the declaration was in the name of the plaintiff and the overseers of the poor, when the process was in the name of the plaintiff only. 5th. That the justice refused on a motion made to quash the proceedings. 6th. That before the jury process was returned, another was issued. 7th. That the justice opened the court on the second day of *June*, and continued it open till the third before he tried the cause. 8th. That the justice swore the constable " to attend the said jury, " and to the utmost of his ability to keep that jury to- " gether until they had agreed upon their verdict,"

whereas, by the law of the land he ought to have sworn the constable to keep them " in some private " and convenient place without meat or drink, except " water, and not to suffer any person to speak to " them, nor to speak to them himself, unless by order " of the justice, or to ask them whether they have " agreed on their verdict, until they have agreed on " their verdict."

KENT, C. J. I shall consider the causes alleged for error in the order in which they naturally arise. 1st. It is alleged, that the directions of the act, commonly called the 10*l.* act, have not been observed, as the first process was by warrant and not by summons. The act directs that the justice, on application under the act, shall issue a summons or warrant, as the case may require; that the first process against freeholders and inhabitants having families, shall be by summons, unless the plaintiff shall prove on oath that he is in danger of losing his demand, or that he believes the defendant will depart the country, or unless the plaintiff be non-resident, &c. The return states, that the plaintiff below, prayed process by warrant, and that the justice thereupon, and in *pursuance of the act*, issued his warrant; that the defendant was brought in on the warrant, and the plaintiff declared, and the defendant joined issue thereon, and prayed an adjournment, which was granted, and on the day to which adjourned, the parties again appeared, and then the defendant objected that the warrant did not issue in conformity to the act *regulating informations*. As the defendant, therefore, acquiesced in the process and never objected to it, be-

cause it was a warrant, and it being stated to be issu-
ed in pursuance of the act, we are to intend it was
duly issued, or if not so, the irregularity was waiv-
ed by the defendant. 2d. It is alleged, that the suit
being for a penalty given by the 16th section of the
tavern act, 1 *Rev. Laws*, 490. ought to have follow-
ed the directions of the act, passed 6th *February*,
1788, *to redress disorders by common informers*,
which requires the name of the plaintiff and the title
of the act to be indorsed. Proceedings under the
10*l.* act, are to be regulated entirely by that act, and
the act relative to common informers, does not apply
to these proceedings. The terms of it are altogether
inapplicable. It supposes process to be issued by *a
clerk*, and says that the like process shall be award-
ed as in an action *of trespass at common law*. 3d.
The warrant is alleged not to state a plea or cause of
action to which the defendant is to answer, and that
it is stated, that the defendant is to answer *to the peo-
ple*, whereas the 10*l.* act says, that justices shall not
have cognizance of any cause wherein the people are
concerned. The defects in the warrant, whatever
they may be, are cured by the general plea of the de-
fendant. He has waived all these defects since he
pleaded the general issue, and afterwards made no
other objection to the warrant, than that it did not
conform to the act relative to common informers, and
which act, as I have already observed, did not, and
could not apply. We have decided in the cases of
*Wool and Bevil*, *July* term, 1801, and of *Young and
Canada*, *January* term, 1802, that a defective *venire*
was cured if the party made no objection at the time,
but went on to trial, and there is equal, if not stronger

reason why a like conduct should cure a defective process, the only object of which was to bring the party into court.    But I consider the process as good.    It states the ground of action specifically, and that the plaintiff was the complainant upon oath, and that the defendant was to be brought in, to answer to the complaint of the plaintiff, and does not allege that he was to answer to the people.    4th. It is alleged that the declaration varies in substance from the process.    The proper answer to this is, that the defendant by not pleading that variance, but pleading in chief has waived it, and so this court has frequently decided in like cases.    But it is not true in fact, that there is any substantial variance.    The declaration only unfolds more at large the same charge, which is briefly stated in the process, to wit, the retailing of spirituous liquors without a permit.    5th.    Another objection is,  that the justice overruled the motion to quash the proceedings, or as the record says, to abate the warrant.    The answer to this has already sufficiently been given, since the only reason assigned why it should be abated, was that the process did not conform to the act for regulating informations.    6th. It is next objected, that the *venire* is defective, but as the *venire* was issued at the instance, and upon the prayer of the defendant, it does not lie with him to allege error in it. This point was decided by this court in the cause of *Callinan* v. *Jillson, October* term, 1801, and it has frequently been so decided in other cases, nor do I conceive it to have been illegal for the justice to have issued a fresh *venire* when the first *venire* had not been carried into effect, but had been *mislaid, kept, or withheld* by the defendant himself, to whom it had been

delivered. This allegation in the record we are to take for *truth*, and it became indispensable then, that a new *venire* should issue, or the act of the defendant might have totally defeated the plaintiff's action. It would not have been legal, I apprehend, for the justice to have proceeded to try the cause without a jury, after the prayer of the defendant for one, and it would be most unjust for him to avail himself of his own *laches*, or act to injure the action of the plaintiff. I am of opinion, therefore, that the issuing of the second *venire* was proper, and that it is to be considered as the process of the defendant below, and that no objection to the form of it will now lie with that defendant. 7th. Another objection is, that the court was continued over from the second of *June*, when the first *venire* was returnable, to the third of *June*, when the cause was tried. If the court was opened on the second of *June*, as we must intend, and the delay created by the defendant in summoning the jury, rendered it requisite to keep *the court open* till the next day, there was no error in that proceeding. It became necessary, and the parties were *bound to take notice of it* and attend accordingly.— There is nothing in the law to prohibit a justice from continuing his court from one day to the next, when the exigencies of the case require it. If the defendant neglected or refused to attend, the justice was authorised to proceed in the trial *without him;* but we are rather to intend that the parties were present at the trial, for the record states, that the jury did hear the *proofs and allegations*, then and there made and exhibited. However, it is immaterial in respect to the objection, whether the defendant was, or was not

3 D

Aug. Term,
1804. present.    8th. The last error alleged, and which re-
quires notice is, that the constable was not sworn ac-
cording to law to keep the jury.    The act gives a
precise form of oath in this case, and the return states
that after the jury had heard the proofs and allega-
tions, the constable was sworn *to attend them, and to
the utmost of his ability to keep them together in some
private and convenient place, until they had agreed up-
on their verdict.*    The return does not state any fur-
ther, as to the oath, nor are there any negative words
excluding the inference that the whole oath was ad-
ministered in the form prescribed.    As far as the
oath is stated it is correct, and, in my opinion, we
must *intend* the whole oath was duly administered.
This intendment is, in many respects, reasonable, for
in the first place, there was no objection stated at the
time by either party to the form of the oath, and set-
ting forth the words of the oath was an act of supere-
rogation in the justice, as it formed no part of the re-
cord and process before him.    The form of the oath
to the witnesses is equally prescribed by the act, and
yet the form is never or rarely set forth in the return
to a *certiorari*, nor is it ever required.    The record
does not set forth the oath stated as given *in hæc ver-
ba.*    It does not pretend to give the exact form of the
one administered.    If the oath, as far as stated, had
varied from the act, it might have altered the case,
but pursuing it as far as stated, and not being aver-
red to have been *all* the oath that was administered,
we are bound to conclude the constable was legally
sworn.    It has been established by several decisions
in this court, that we would liberally intend in favour
of the legality of justices' proceedings.    Thus in the

case of *Wright* v. *Anthony, January* term, 1802, we said we would intend an issue joined if the parties went to trial on the merits ; and in the case of *Carna* v. *Penfield,* at the same term, the jury, it appeared, had found eight cents for the defendant on a plea of payment, and we *intended a set-off,* to help it out. These decisions are in conformity to the intent and spirit of the act which declares, p. 500. that we shall give judgment according *as the very right of the case shall appear,* without regarding any imperfection, *omission* or defect in the proceedings in the court below in mere matters of form. I cannot but think that reversing a justice's judgment, because part only of the constable's oath is inserted in the record, would be a decision at once new and rigorous ; especially, when none of it need be inserted ; when there are no words negativing the idea that the whole form was administered, when no objection was taken at the time by the parties, when we are bound to overlook all defects of form and decide on the very right of the case, and when in many other instances we have liberally intended in support of their judgments.

THOMPSON, J. concurred in the above opinion in all points.

LIVINGSTON, SPENCER, and TOMPKINS, J. in all, except as to the constable's oath ; on that point, they conceived the error fatal, and therefore ordered judgment of reversal.

*Gold,* the next day, on an affidavit, stating that the manner in which the oath was set forth in the record,

Aug. Term,
1804.

arose from a clerical error in copying, applied on the authorities of *Cowp*. 325.\* *Doug*. 134.† and 1 *H. Black*. 238.‡ to amend the return. The Court was pleased to *order*, that the entry of judgment should be staid until further order, and that the justice have leave till the first day of next term to amend his return, so far as relates to the form of the said oath.

\* *Varelst and Smith* v. *Rafael.*
† *The King* v. *Lyme Regis.*
‡ *Skutt* v. *Woodward,*